1  Brent H. Blakely (SBN 157292)
   bblakely@blakelylawgroup.com
2  Cindy Chan (SBN 247495)
   cchan@blakelylawgroup.com
3  BLAKELY LAW GROUP
   915 North Citrus Avenue
4  Los Angeles, California 90038
   Telephone: (323) 464-7400
5  Facsimile: (323) 464-7410

6  *Attorneys for Plaintiffs Quiksilver, Inc.*
7  *and Coach Services, Inc.*

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

10

11 QUIKSILVER, INC., a Delaware       ) CASE NO. SA CV 09-1065 JVS (RNBx)
   Corporation; COACH SERVICES, INC., )
12 a Maryland Corporation,            ) **FIRST AMENDED COMPLAINT FOR**
                                      ) **DAMAGES:**
13              Plaintiffs,           )
         vs.                          ) 1.   **COPYRIGHT INFRINGEMENT**;
14                                    )      (17 U.S.C. § 501, et. seq.)
   WORLD WIDE WATCHES, INC., a        )
15 California Corporation; AJAZ       ) 2.   **TRADEMARK INFRINGEMENT**
   RAMZAN, an individual; SHAHERUZ    )      (15 U.S.C. §1114);
16 RAMZAN, an individual; and DOES 1- )
   10, inclusive,                     ) 3.   **TRADEMARK DILUTION**
17                                    )      (15 U.S.C. §1125(c));
                Defendants.           )
18                                    ) 4.   **COMMON LAW UNFAIR**
                                      )      **COMPETITION**;
19                                    )
                                      ) 5.   **INJURY TO BUSINESS**
20                                    )      **REPUTATION; DILUTION**
                                      )      (Cal. Bus. & Prof. Code §
21                                    )      14247);
                                      )
22                                    )
                                      )      **JURY TRIAL DEMANDED**
23
   ─────────────────────────────────
24     Plaintiffs Coach Services, Inc. and Quiksilver, Inc. ("Plaintiffs"), for their claims
25 against Defendants World Wide Watches, Inc., Ajaz Ramzan, and Shaheruz Ramzan
26 ("Defendants"), respectfully allege as follows:
27 ///
28 ///

## JURISDICTION AND VENUE

1. Plaintiffs file this action against Defendants for copyright infringement under 17 U.S.C. § 101, et seq., as well as trademark and trade dress infringement, trademark dilution under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act"), and related claims of unfair competition and trademark dilution under the statutory and common law of the State of California. This Court has subject matter jurisdiction over the Federal trademark counterfeiting and infringement and trademark dilution claims under 28 U.S.C. §§1121(a), 1331, 1338(a) and 1367.

2. This Court has personal jurisdiction over Defendants because Defendants conduct business and has headquarters and/or are domiciled within the state of California.

3. This action arises out of wrongful acts, including advertising, offering for sale, selling and distributing products by Defendants within this judicial district. Venue is proper in this district pursuant to 28 U.S.C. §1391 because the claims asserted arise in this district.

## THE PARTIES

4. Plaintiff Coach Services, Inc. is a corporation organized and existing under the laws of the state of Maryland with an office and principal place of business in New York, New York.

5. Plaintiff Quiksilver, Inc. is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of business in Huntington Beach, California.

6. Upon information and belief, Defendant World Wide Watches, Inc. is a corporation organized and existing under the laws of the state of California with an office and principal place of business at 1333 South Hill Street, Los Angeles, California 90015.

1  7.  Upon information and belief, Defendants Ajaz Ramzan and Shaheruz Ramzan are individuals domiciled at 15210 Weddington Street, Sherman Oaks, California 91411 and doing business at World Wide Watches.

8.  Plaintiffs are unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiffs will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiffs are informed and believe, and based thereon allege, that said Defendants and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein and, that at all times referenced, each was the agent and servant of the other Defendants and was acting within the course and scope of said agency and employment.

9.  Plaintiffs are informed and believe, and based thereon allege, that at all relevant times herein, Defendants and DOES 1 through 10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiffs further allege that Defendants and DOES 1 through 10, inclusive, have a non-delegable duty to prevent or cause such acts and the behavior described herein, which duty Defendants and DOES 1 though 10, inclusive, failed and/or refused to perform.

## NATURE OF ACTION

10.  Plaintiffs seek injunctive relief, damages and a declaratory judgment based upon Defendants' unfair competition with Plaintiffs arising from Defendants' willful infringement and dilution of Plaintiffs' trademarks. Defendants' willful infringement has impacted upon Plaintiffs' rights directly as well as upon Plaintiffs' ability to maintain consumer satisfaction. In this regard, it is noteworthy that most, if not all, of the infringing items below were presented in a confusingly deceptive manner, that they are of obvious inferior quality when compared to the authentic

products of Plaintiffs' trademarks, and are priced in such a way that implies to the buying public that these items are, indeed, genuine.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.    QUIKSILVER's Family of Trademarks, Logos, and Designs**

11.   Since the 1970's, Quiksilver has been and is now engaged in the business of manufacturing, promoting, distributing, and selling its high-quality clothing. All of Quiksilver's products are manufactured pursuant to its strict specifications and quality control.

12.   Quiksilver has long used, prior to the acts of Defendants herein, several trademarks, including but not limited to Quiksilver, in plain and stylized format, and the Mountain and Wave design logo.

13.   Quiksilver is the owner of the world-famous word/mark "Quiksilver." On April 11, 1967, the Quiksilver mark was registered on the Principal Register of the United States Patent & Trademark Office as Registration No. 827212, for "Men's clothing, namely suits, jackets, topcoats, trousers, and sport coats." Subsequent thereto, Quiksilver has registered the Quiksilver mark and a variety of other marks, including the Mountain and Wave design logo, on merchandise ranging from luggage, watches and jewelry, sunglasses, swimwear, and all other varieties of men's and women's clothing and footwear (collectively, "Quiksilver Marks"). Quiksilver's right to use the Quiksilver Marks in commerce has become uncontestable pursuant to 15 U.S.C. §1065.

14.   In addition to the trademark registrations, the "Quiksilver Mountain and Wave" logo (below) is a copyrighted design with U.S. Copyright Registration Nos. VA 1088115 and VA 1088246.

15. Quiksilver introduced its junior line of clothing "ROXY" in or around Spring of 1991. The Roxy Heart Device, which is made up of two mirror-image Quiksilver Mountain and Wave logos (see below), has been used in connection with the Roxy line since as early as 1992.



16. In 1997, Quiksilver registered the word mark "ROXY" as well as the Roxy Heart Device (hereinafter collectively "Roxy Marks") Quiksilver's Roxy Marks include, but are not limited to, U.S. Registration Nos. 2,225,688, 2,220,442; and 2,978,299. The registrations for these Roxy Marks are valid, subsisting and exclusively owned by Quiksilver.

17. At all times relevant hereto, Quiksilver's trademarks have been continually used by Quiksilver throughout the world and in the United States, including California, on or in connection with the manufacture, distribution, sale and promotion of its products.

18. As a result of Quiksilver's widespread and continuous use, advertisement, and the promotion of its products in connection with its Quiksilver and Roxy Marks, the marks have become widely-known and recognized in identifying Quiksilver as the source of a wide variety of clothing and related goods, and in distinguishing such goods from those of other manufacturers. Quiksilver's trademarks have come to represent and symbolize the excellent reputation of Quiksilver's products and valuable goodwill among members of the public throughout the world and in the United States, including California.

19. Quiksilver's Roxy Marks have acquired a secondary meaning throughout the world and in the United States, including California.

**B.     COACH's Family of Trademarks, Logos, and Designs**

20.    Coach was founded more than sixty years ago as a family-run workshop in a Manhattan loft. Since that time, Coach has been engaged in the manufacture, marketing, and sale of fine leather and mixed material products including handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories.

21.    Coach is the worldwide owner of the trademark "COACH" and various composite trademarks and assorted design components ("Coach Marks").

22.    Amongst the many Coach Marks, one of the most well-known and recognized marks is Coach's Signature "C" logo (see below). Coach has used the Signature "C" logo in association with the sale of goods since as early as 2001. The Signature "C" logo was first registered at the U.S. Patent and Trademark Office on September 24, 2002. Registrations for the Signature "C" logo include, but are not limited to, U.S. Reg. Nos. 2,626,565; 2,822,318; and 2,832,589.



23.    Coach has used the Signature "C" logo in connection with the sale of handbags and other leather and/or mixed material goods, including watches and watch straps, since as early as 2001.

24.    Many of Coach's products exhibit composites of the Signature "C" logo in an assortment of different sizes, patterns, and colors ("CC Design"), to which Coach owns the copyright registration (U.S. Reg. No. VA0001228917).

25.    The CC Design is highly recognized by the public and serves to identify the source of the goods as Coach.

26.    Coach has long been manufacturing and selling in interstate commerce high quality leather and mixed material products bearing the Coach Marks. These

registrations are valid and subsisting and are incontestable. Through longstanding use, advertising and registration, the Coach Marks have achieved a high degree of consumer recognition and constitute famous marks.

27. Coach and its predecessors have continuously used the Coach Marks and CC Design in interstate commerce in connection with the sale, distribution, promotion, and advertising of its goods for four decades.

28. Coach and its predecessors have achieved sales volumes of over three billion dollars annually from goods bearing the CC Design. As such, the CC Design and the goodwill associated therewith are valuable assets of Coach.

29. Coach and its predecessors have expended over a hundred million dollars in advertising, promoting, and marketing goods featuring the CC Design.

30. Due to Coach and its predecessors' long use, extensive sales, and significant advertising and promotional activities, the CC Design has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. The arbitrary and distinctive CC Design and Coach Marks identify Coach as the source/origin of the goods on which it appears.

**C.  Defendants' Infringing Use of Plaintiffs' Trademarks and Copyrighted Designs**

31. This lawsuit concerns infringement upon Quiksilver's Roxy Marks and Coach's CC Design by Defendants.

32. In or around July of 2009, Plaintiffs discovered that Defendant World Wide Watches had been advertising, distributing, offering for sale, and/or selling watches and watch accessories bearing counterfeit reproductions of the Roxy Marks and CC Design.

33. Plaintiffs' representatives have inspected the products obtained from World Wide Watches and confirmed that the products were indeed counterfeit.

34. Furthermore, Defendants are not authorized by Plaintiffs to manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing any of Plaintiffs' federally registered trademarks and copyrights.

35. Upon information and belief, Defendants Ajaz Ramzan and Shaheruz Ramzan, as officers of World Wide Watches, were the active, moving, conscious forces behind the alleged infringing activities.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

36. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

37. As the owner of the Quiksilver Mountain and Wave design (U.S. Registration Nos. VA 1088115 and VA 1088246), Quiksilver is entitled to exclusive use of this logo without the unauthorized use by third parties. Mirror images of the Quiksilver Mountain and Wave design make up the world famous Roxy Heart Device, which is featured on the infringing products purchased from Defendants.

38. As the owner of the CC Design (U.S. Reg. No. VA0001228917), Coach is entitled to exclusive use of this logo without the unauthorized use by third parties.

39. Given the widespread popularity of the Quiksilver Mountain and Wave design, the Roxy Heart Device, and the CC Design, Defendants had access to these logos and, upon information and belief, Defendants have knowingly infringed upon said marks by manufacturing, distributing, advertising and selling piratical copies of the designs to the public in violation of 17 U.S.C. § 501.

40. Upon information and belief, Defendants have intentionally, knowingly and willfully copied Plaintiff Quiksilver's Mountain and Wave Design and Plaintiff Coach's CC Design in order to personally benefit from the widespread customer recognition and acceptance of said designs/logos, and to capitalize upon the market created by said designs.

41.  Upon information and belief, the aforesaid infringements by Defendants of Plaintiffs' copyrighted works occurred and continue to occur with the knowledge that such designs are copyrighted and the Defendants, in committing the acts complained of herein, has willfully infringed upon Plaintiffs' rights under the Copyright Laws of the United States, Title 17 U.S.C. § 101, et seq.

42.  The products sold by Defendants are identical to Plaintiffs' designs. There can be no doubt that Plaintiffs' designs were employed to manufacture the molds used to make Defendants' piratical copies.

43.  Defendants' infringement of Plaintiffs' copyrighted works is to the great and irreparable damage of Plaintiffs, and Plaintiffs are informed and believe, as indicated, that Defendants will continue such infringement unless enjoined by this Court.

44.  Plaintiffs have suffered loss of profits and other damage, and Defendants have earned illegal profits in an amount to be proven at trial, as the result of the aforesaid acts of Defendants.

45.  Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under the Lanham Act)

46.  Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

47.  Quiksilver's Roxy Marks and Coach's Signature "C" logo (hereinafter collectively "Plaintiffs' Respective Marks") are nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality and as originating from Plaintiffs.

48.  Defendants' unauthorized use of Plaintiffs' Respective Marks in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs, or come from the same source as

Plaintiffs' goods, and thus are of the same quality as that assured by Plaintiffs' Respective Marks.

49. Defendants' use of Plaintiffs' Respective Marks is without Plaintiffs' permission or authority and in total disregard of Plaintiffs' rights to control their trademarks.

50. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or are otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiffs.

51. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with Plaintiffs' Respective Marks.

52. Defendants' acts violate the Lanham Act.

53. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiffs have been injured and will continue to suffer injury to their business and reputation unless Defendants are restrained by this Court from infringing Plaintiffs' Respective Marks.

54. Plaintiffs have no adequate remedy at law.

55. In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' Respective Marks for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts; all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known; the costs of this action pursuant to 15 U.S.C. § 1117(a); attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

///

## THIRD CLAIM FOR RELIEF

### (Trademark Dilution – 15 U.S.C. § 1125(c))

56. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

57. Plaintiffs' Respective Marks are "famous" within the meaning of the Lanham Act.

58. Defendants have used in commerce, in connection with the sale of its products, counterfeit reproductions of Plaintiffs' Respective Marks.

59. Defendants' acts are likely to cause, and most likely have caused, confusion or mistake as to the affiliation, connection, or association between Defendants and Plaintiffs, or as to the origin, sponsorship, or approval of said infringing goods.

60. Defendants' acts described above have diluted and continue to dilute Plaintiffs' unique and distinctive trademarks. These acts violate the Lanham Act, have injured and, unless immediately restrained, will continue to injure Plaintiffs, causing damage to Plaintiffs in an amount to be determined at trial, as well as irreparable injury to Plaintiffs' goodwill and reputation associated with the value of Plaintiffs' trademarks.

61. Upon information and belief, Defendants' unlawful actions began long after Plaintiffs' Respective Marks became famous.

62. Upon information and belief, Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiffs' reputation and to dilute Plaintiffs' Respective Marks. Defendants' conduct is willful, wanton and egregious.

63. Plaintiffs have no adequate remedy at law to compensate them fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless Defendants are enjoined by this Court.

64. In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' Respective Marks, and to recover all

damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, all gains, profits and advantages obtained by Defendants as a result of its infringing acts alleged above in an amount not yet known, and the costs of this action.

## FOURTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

65. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

66. Plaintiffs own and enjoy common law trademark rights in California and throughout the United States.

67. Defendants' unlawful acts in appropriating rights in Plaintiffs' common law trademarks were intended to capitalize on Plaintiffs' goodwill for Defendants' own pecuniary gain. Plaintiffs have expended substantial time, resources and effort to obtain an excellent reputation for their respective trademarks. As a result of Plaintiffs' efforts, Defendants are now unjustly enriched and is benefiting from property rights that rightfully belong to Plaintiffs.

68. Defendants' unauthorized use of Plaintiffs' Respective Marks has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Plaintiffs.

69. Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiffs.

70. Defendants' acts constitute unfair competition under California common law.

71. Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless Defendants are permanently enjoined from its unlawful conduct.

72. The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights. Said conduct was despicable and harmful to Plaintiffs and as such supports an award of exemplary

1 and punitive damages in an amount sufficient to punish and make an example of the
2 Defendants, and to deter Defendants from similar conduct in the future.

73. Plaintiffs have no adequate remedy at law.

74. In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using Plaintiffs' Respective Marks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## FIFTH CLAIM FOR RELIEF

### (Violation of Cal. Bus & Prof. Code § 14247)

75. Plaintiffs incorporate herein by reference the averments of the preceding paragraphs as though fully set forth herein.

76. Plaintiffs' Respective Marks are distinctive marks in the state of California by virtue of their substantial inherent and acquired distinctiveness, their extensive use in the state of California, and the extensive advertising and widespread publicity of the marks in the state of California.

77. As a result of the substantial inherent and acquired distinctiveness of Plaintiffs' Respective Marks, their extensive use in the state of California, and the extensive advertising and publicity of the marks in the state of California, they have become strong and are widely renowned.

78. The actions of Defendants complained of herein are likely to injure the business reputation and dilute the distinctive quality of the Coach Marks, which are famous.

79. The foregoing acts of Defendants constitute dilution and injury to business reputation in violation of Section 14247 of the California Business and Professions Code.

80. The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights. Said conduct

13
FIRST AMENDED COMPLAINT

was despicable and harmful to Plaintiffs and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants and to deter Defendants from similar conduct in the future.

81. By reason of the foregoing, Plaintiffs are being damaged by Defendants' unauthorized and illegal use of their respective trademarks in the manner set forth above and will continue to be damaged unless Defendants are immediately enjoined under Sections 14247 and 14250 of the California Business and Professions Code from using any of Plaintiffs' Respective Marks.

82. Plaintiffs will be irreparably injured by the continued acts of Defendants, unless such acts are enjoined.

83. Plaintiffs have no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants as follows:

A. Granting temporary, preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1) Using any of Plaintiffs' respective trademarks and/or copyrighted designs in connection with the manufacturing, distribution, advertising, offering for sale, and/or sale of merchandise;

(2) Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiffs;

(3) Otherwise infringing Plaintiffs' registered and common law family of trademarks and copyrighted designs;

(4) Otherwise diluting Plaintiffs' family of trademarks and copyrighted designs;

1                    (5)    Unfairly competing with Plaintiffs.

2       B.    Awarding actual damages suffered by Plaintiffs as a result of Defendants' acts;

3       C.    Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

4       D.    Ordering Defendants to disgorge its profits;

5       E.    Awarding Plaintiffs all of Defendants' profits and all damages sustained by Plaintiffs as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b).

6       F.    Awarding treble damages in the amount of Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

7       G.    Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b) and 17 U.S.C. § 505;

8       H.    Awarding Plaintiffs statutory damages pursuant to 15 U.S.C. §1117(c) and 17 U.S.C. § 504(c);

9       I.    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated: October 19, 2009                BLAKELY LAW GROUP

                                       By: _____
                                       Brent H. Blakely
                                       Cindy Chan
                                       *Attorneys for Plaintiffs Quiksilver, Inc.
                                       and Coach Services, Inc.*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all claims in this litigation.

Dated: October 19, 2009

BLAKELY LAW GROUP

By: _____
Brent H. Blakely
Cindy Chan
***Attorneys for Plaintiffs Quiksilver, Inc. and Coach Services, Inc.***